UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| JUSTIN D. GUERRIERO | * | CIVIL ACTION NO.  09-1846 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY | * | MAG. JUDGE KAREN L. HAYES |

<u>REPORT AND RECOMMENDATION</u>

Before the court is a motion to dismiss the complaint for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6) [doc. # 21], filed by defendant American National Property and Casualty Company ("ANPAC").  The district court referred the motion to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For reasons assigned below, it is recommended that defendant's motion to dismiss be DENIED.

<u>Background</u>

On September 28, 2009, Justin D. Guerriero filed the instant "Petition for Damages Based on Detrimental Reliance" against ANPAC in the Fourth Judicial District Court for the Parish of Ouachita, State of Louisiana.  Plaintiff contends that in 2001 ANPAC enticed him to leave his position as an agent with Farm Bureau Insurance Company with a promise that after five years Guerriero would own his own book of business and that he would have a required profile number of 500.  (Petition, ¶¶ 1-2, 6).  After Guerriero left his position with Farm Bureau, he was advised that he had to sign ANPAC's proffered contract or else he could not work for ANPAC.  *Id*. at ¶ 3.  Accordingly, on September 19, 2001, Guerriero and ANPAC entered into an Agent

Agreement.  *Id*. at ¶ 3.  Shortly after he began his agency with ANPAC, plaintiff alleges that ANPAC raised his profile number from 500 to 600 and that "had he known that the profile requirement was going to be raised to 600, he would have never left Farm Bureau and signed a contract with [ANPAC]."  *Id*. at ¶ 6.

In 2005, while still working as an ANPAC agent, plaintiff began a part-time job "managing a group unloading 18 wheelers at a local Brookshires warehouse, working only from the hours of 5 a.m. to 9 a.m." *Id.* ¶ 9.  Guerriero contends that ANPAC's agent asked him to resign his part-time job to focus his efforts on working as an agent for ANPAC.  *Id*.  However, plaintiff refused to do so.  *Id*.  Accordingly on March 29, 2006, ANPAC sent Guerriero a letter terminating the Contract between Guerriero and ANPAC.  *See* Petition, ¶ 10; March 29, 2006, Letter, M/Dismiss Exh. B [doc. # 23-3].[1]  In the wake of the termination letter, Guerriero contacted ANPAC and received an "ultimatum that if he would quit his part-time job [ANPAC] would not terminate Plaintiff."  (Petition, ¶ 10).  Relying upon this assurance, Guerriero ceased his part-time work and continued working as an insurance agent for ANPAC.  *Id*.  Nonetheless, approximately ten months later, ANPAC permanently discharged plaintiff.  *Id*.

Guerriero seeks to recover damages from ANPAC for his lost opportunity and income from his $50,000 per year part-time job that he left, and an award for losses that he sustained when ANPAC lured him away from his position with Farm Bureau.  *Id*. at ¶¶ 13-14.

---

[1]  When considering a motion to dismiss, courts generally are constrained to the complaint and its proper attachments.  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted).  As here, however, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim."  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000) (citations and internal quotation marks omitted).

On October 23, 2009, ANPAC removed the case to federal court on the basis of diversity jurisdiction, 28 U.S.C. § 1332.  [doc. # 1].  On November 19, 2009, ANPAC filed the instant motion to dismiss for failure to state a claim upon which relief can be granted.  Fed.R.Civ.P. 12(b)(6).  ANPAC contends that under the applicable laws of Missouri or Louisiana, a claim for detrimental reliance must be dismissed as a matter of law where a written contract exists that governs the relationship for which damages are being sought.  (Def. Memo., pgs. 1-2).  Briefing is complete; the matter is now before the court.

## Discussion

### I.      12(b)(6) Standard

Federal Rule of Civil Procedure 12(b) permits dismissal where the claimant fails "to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1966 (2007) (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, 234)).  In evaluating a motion to dismiss, "the District Court must take the factual allegations of the complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff.  *Fernandez-Montes v. Allied Pilots Association*, 987 F.2d 278 (5th Cir. 1993) (citation omitted).  The factual allegations need not be detailed, but they must be more than labels, conclusions, or a recitation of the elements of the claim.  *Twombly, supra*. Moreover,

> the '[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint

3

are true (even if doubtful in fact)' and the non-moving party must plead 'enough
facts to state a claim to relief that is plausible on its face.'  This standard 'simply
calls for enough facts to raise a reasonable expectation that discovery will reveal
evidence of' the necessary claims or elements.

*In re Southern Scrap Material Co., LLC*, 541 F.3d 584 (5ᵗʰ Cir. 2008) (internal citation omitted),
*cert. denied by, Southern Scrap Material Co., L.L.C. v. U.S.*, ___ U.S. ___, 129 S.Ct.1669
(2009).

Courts are compelled to dismiss claims based upon invalid legal theories even though they might

otherwise be well-pleaded.  *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).  However,

"[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not

require an inordinate amount of detail or precision."  *Gilbert v. Outback Steakhouse of Florida*

*Inc.*, 295 Fed. Appx. 710, 713 (5ᵗʰ Cir. Oct. 10, 2008) (unpubl.) (citations and internal quotation

marks omitted).  Furthermore, the complaint need not "correctly specify the legal theory" giving

rise to the claim for relief.  *Id*.

**II.     Detrimental Reliance**

        a)       Argument

        Plaintiff seeks to recover against ANPAC under a theory of detrimental reliance.

(Petition, ¶ 12; Pl. Opp. Memo., pg. 2).  He alleges two separate instances of detrimental

reliance:  1) when ANPAC purportedly made certain promises to induce him to leave his position

with Farm Bureau and to go work for ANPAC; and 2) when ANPAC induced plaintiff to

relinquish his part-time employment by assuring him that if he did so, ANPAC would not

terminate the Agent Agreement.  (Pl. Opp. Memo., pgs. 2-3).

        Under Louisiana law, "[a] party may be obligated by a promise when he knew or should

have known that the promise would induce the other party to rely on it to his detriment and the

other party was reasonable in so relying."  La. Civ. Code Art. 1967 (in pertinent part).  To prevail

4

on his claim for detrimental reliance, plaintiff must prove the following by a preponderance of

the evidence:  "(1) a representation by conduct or word; (2) made in such a manner that the

promisor should have expected the promisee to rely upon it; (3) justifiable reliance by the

promisee; and (4) a change in position to the promisee's detriment because of the reliance."  *In re*

*Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 334 (5th Cir. 2007) (citation omitted).  Detrimental

reliance claims are not favored in Louisiana, and they must be examined strictly and carefully.

*Id*.

ANPAC argues that pursuant to the choice of law provision contained in the Agent

Agreement, plaintiff's claim for detrimental reliance is governed by Missouri law.  (Agent

Agreement, Sec. I, ¶ H).  ANPAC further argues that Missouri law precludes a claim for

promissory estoppel – the common law equivalent for detrimental reliance – when the parties are

subject to an unambiguous contract that covers the issue for which damages are sought.  *Saey v.*

*Xerox Corp.*, 31 F.Supp.2d 692, 698 (E.D. Mo.1998) (citations omitted).  ANPAC relies upon

the following provisions incorporated into the Agent Agreement,[2]

### H.    MODIFICATION OR AMENDMENT

1.    Any modification or amendment of this Agreement must be <u>in
      writing</u> and signed by you and by a duly authorized Company
      Headquarters Representative.

                        *        *        *

3.    This Agreement shall be entered into in Springfield, Missouri, and
      the validity, construction, and performance of this Agreement shall
      be controlled by and construed under the laws of the State of
      Missouri.

---

[2]  Plaintiff referenced the Agent Agreement in his complaint; thus, the court may consider
a copy of the agreement attached by defendant in support of its motion to dismiss.  *See Collins,*
*supra*.

**SECTION III**
**TERMINATION**

    **A.**    You or the Company may terminate this Agreement unilaterally without cause at any time by giving written notice to the other party at least thirty (30) days prior to the date fixed for termination. The notice shall be delivered personally or mailed to the other party's last know address.

    **B.**    You acknowledge that the Company has not expressly or by implication agreed to continue the term of this Agreement for any definite period of time.

*      *      *

**SECTION VI**
**RESERVED RIGHTS AND CONDITIONS**
**OF THE COMPANY**

*      *      *

**D.**    **WAIVER**

    No act or forbearance on the part of the Company to enforce any of the provisions of this Agreement shall be construed as a modification of this Agreement nor shall the failure of either party to exercise any right or privilege granted in this Agreement be considered as a waiver of that right or privilege.

*      *      *

**F.**    **SOLE AGREEMENT**

    This Agreement, with the attached Schedules and Supplements, constitutes the sole agreement and supersedes all prior Agreements between you and the Company.

(Agent Agreement, §§ I(H), III(A) & (B), VI(D) & (F) ; Def. M/Dismiss, Exh. A).

    b)    <u>Analysis</u>

    As a court sitting in diversity, choice of law issues are governed by the conflicts rules of

the forum state. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U. S. 487, 61 S.Ct. 1020

(1941).  Under Louisiana law, "issues of conventional obligations are governed by the law

6

expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537." La. Civ. Code Art. 3540. However, "'preliminary' issues that pertain to the existence of the choice of law clause, such as consent and vices of consent, . . . should be judged according to the law applicable under Article 3537." *Id*., comment (c).

Accepting, for the moment, ANPAC's argument that the choice of law provision in the Agent Agreement is effective and applicable to plaintiff's claim for detrimental reliance/promissory estoppel, the court is not persuaded that plaintiff has not stated a viable claim for relief. Under Missouri law, a claim of promissory estoppel has four elements: "(1) a promise; (2) on which a party relies to his or her detriment; (3) in a way the promisor expected or should have expected; and (4) resulting in an injustice that only enforcement of the promise could cure." *Clevenger v. Oliver Ins. Agency, Inc.*, 237 S.W.3d 588, 590 (Mo. 2007) (citations omitted). As in Louisiana, promissory estoppel is not favored; each element must be clearly proven. *Id*.

At a minimum, it is manifest that plaintiff has alleged requisite facts to satisfy the first two elements of a promissory estoppel claim. Accordingly, ANPAC appears to take issue with the two remaining elements essentially on the basis that the terms of the Agent Agreement preclude plaintiff from relying upon any oral modifications or representations made outside the four corners of the document. However, there is contrary authority under Missouri law:

> [w]hile it is true that a written contract cannot be contradicted, modified, or altered by parol evidence of prior or contemporaneous agreements, **the parol evidence rule does not prohibit parol evidence of an agreement entered into subsequent to the time when the written contract was executed to alter or abrogate the written contract**.

*Gee v. Nieberg*, 501 S.W.2d 542 (Mo. App. 1973) (citations omitted) (emphasis added).

Furthermore,

(p)arties to a contract cannot, even by an express provision in that contract, deprive themselves of the power to alter or vary or discharge it by subsequent agreement. **An express provision in a written contract that no rescission or variation shall be valid unless ti [sic] too is in writing is ineffective to invalidate a subsequent oral agreement to the contrary. In like manner, a provision that an express condition of a promise or promises in the contract cannot be eliminated by waiver, or by conduct constituting an estoppel, is wholly ineffective**. The promisor still has the power to waive the condition, or by his conduct to estop himself from insisting upon it, to the same extent that he would have had this power if there had been no such provision.

*Fritts v. Cloud Oak Flooring Co.*, 478 S.W.2d 8, 13-14 (Mo. App. 1972) (citations and internal quotation marks omitted) (emphasis added).

Similarly under Louisiana law,

[t]estimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. **Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent, or a simulation, or to prove that the written act was modified by a subsequent and valid oral agreement**.

La. Civ. Code Art. 1848 (emphasis added).

Citing *Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins.Co.*, ANPAC argues that detrimental reliance is unreasonable as a matter of law when a "plaintiff relies on extra-contractual representations despite the existence of an unambiguous, fully integrated contract that provides limited ways of altering the parties' relationship." *Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins.Co.*, 376 F.3d 399, 403 (5th Cir. 2004).

However, *Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins.Co.* relied upon an earlier Fifth Circuit decision, *Omnitech Intern., Inc. v. Clorox Co.*, which stated that

**[w]hile we by no means interpret the merger clause, per se, to preclude any parol evidence as to other possible agreements and/or representations between the parties**, the facts of the instant case compel a conclusion that the merger clause correctly reflected the parties' intentions and should thus be enforced as written.

*Omnitech Intern., Inc. v. Clorox Co.*, 11 F.3d 1316, 1328 (5th Cir. 1994) (emphasis added).

The *Omnitech* court then proceeded to emphasize that plaintiff was represented by counsel

during the contract negotiations.  *Id*.

Courts interpreting this series of Fifth Circuit decisions have observed that they do not automatically preclude a claim for detrimental reliance whenever the parties have a written contract, with an integration clause.  *See Water Craft Management, L.L.C. v. Mercury Marine*, 361 F.Supp.2d 518 (M.D. La. 2004), *affirmed*, 457 F.3d 484 (5th Cir. 2006); *see also Robin v. Binion*, 2007 WL 2895307 (W. D. La. Jan. 5, 2007), *affirmed*, 271 Fed. Appx. 436 (5th Cir.2008) (although the court found that it was unreasonable for plaintiff to rely upon an oral promise made outside of the parties' fully integrated written contract, in so deciding, the court relied upon plaintiff's business acumen and emphasized his experience as an attorney).  Other Louisiana courts have recognized that "[p]arol evidence is admissible to prove a written contract has been modified or abrogated by a subsequent oral agreement if the original contract is not one required by law to be in writing."  *Gravier Co. v. Satellite Business Systems*, 519 So.2d 180, 181 (La. App. 4th Cir. 1987) (and cases cited therein).

Although not argued by plaintiff, the undersigned further observes that plaintiff's petition sets forth facts which tend to indicate that he signed the Agent Agreement under economic duress.  *See* Petition, ¶ 3.  If so, the duress potentially vitiates Guerriero's consent, and undermines the vitality of the Agent Agreement and its preclusive provisions now relied upon by ANPAC.  *See* La. Civ. Code Arts. 1959, 1927; *Wolf v. Louisiana State Racing Comm.*, 545 So.2d 976, 981 (La.1989) (fear of economic deprivation suffices to meet the level of duress required to vitiate consent); *Ingraffia v. NME Hospitals, Inc.*, 943 F.2d 561, 565 (5th Cir. 1991) (consent is

9

one of four elements necessary for a valid contract).[3]

In sum, the undersigned finds that while plaintiff may face an uphill climb to demonstrate that he reasonably relied upon an oral representation(s) that purportedly modified the terms of the parties' written agreement, *at least at this stage*, plaintiff has stated a claim for promissory estoppel/detrimental reliance under Missouri or Louisiana law, sufficient to "raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements."
*In re Southern Scrap Material Co., LLC, supra*.

## IV.    Breach of Contract

ANPAC argues that plaintiff's complaint fails to contain any factual allegations sufficient to support a claim for breach of contract.  However, a detrimental reliance claim sounds in contract.  *See Stokes v. Georgia-Pacific Corp.*, 894 F.2d 764, 770 (5th Cir. 1990) (citations omitted).  Moreover, plaintiff and ANPAC may have confected an oral contract that modified the terms of the Agent Agreement.  *See Gravier Co. v. Satellite Business Systems*, 519 So.2d 180, 182 (La.App. 4th Cir. 1987) (citations omitted).  By alleging that ANPAC failed to honor its alleged promise or agreement not to discharge him, plaintiff has alleged facts to support a claim for breach of contract.

## V.    Conclusion

---

[3]    The court notes that ANPAC attached to its motion to dismiss some preliminary agreements between plaintiff and ANPAC whereby plaintiff agreed not to relinquish his prior employment before ANPAC approved his application for appointment.  (Agent Agreement Before Appointment, ANPAC Exh. A, pgs. 15-16).  However, plaintiff's complaint did not refer to this, or any of the other antecedent agreements.  Accordingly, the court cannot consider them in connection with the instant motion to dismiss.  *Contrast Collins, supra*.

For the reasons set forth above,

**IT IS RECOMMENDED** that the motion to dismiss the complaint for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6) [doc. # 21], filed by defendant American National Property and Casualty Company be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 26th day of February 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE