UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

JUSTIN D. GUERRIERO,
                 Plaintiff

VERSUS

AMERICAN NATIONAL PROPERTY AND
CASUALTY COMPANY,
                 Defendant

CIVIL ACTION NO.:  09-1846

SECTION:

JUDGE:  JAMES

MAGISTRATE JUDGE:  HAYES

**MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER TO
PRECLUDE IMPROPER DISCOVERY ABOUT OTHER ANPAC AGENTS BY
AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY**

## <u>TABLE OF CONTENTS</u>

TABLE OF CASES ...................................................................................................ii

PRELIMINARY STATEMENT ............................................................................ 1

FACTUAL BACKGROUND................................................................................. 3

  I.  AGENT AGREEMENT IS A FULLY INTEGRATED CONTRACT ............................ 3

  II.  DISCOVERY PROPOUNDED BY PLAINTIFF THAT IMPROPERLY SEEKS
     INFORMATION ABOUT OTHER ANPAC AGENTS THAT IS NOT RELEVANT
     TO THIS LITIGATION ................................................................................... 5

ARGUMENT........................................................................................................ 11

  I.  DISCOVERY HAS "ULTIMATE AND NECESSARY BOUNDARIES" THAT
     SHOULD BE ENFORCED BY PROTECTIVE ORDER ........................................... 11

  II.  DISCOVERY REGARDING PRE-CONTRACTUAL NEGOTIATIONS AND
     AGREEMENTS WITH OTHER ANPAC AGENTS IS NEITHER RELEVANT
     NOR LIKELY TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE .... 12

  III.  DISCOVERY REGARDING TERMINATION OF OTHER ANPAC AGENTS IS
      NEITHER RELEVANT NOR LIKELY TO LEAD TO THE DISCOVERY OF
      ADMISSIBLE EVIDENCE........................................................................... 16

CONCLUSION................................................................................................... 19

## **TABLE OF CASES**

*Crochet v. Pierre*
94-543 (La.App. 5 Cir. 11/29/94), 646 So.2d 1222....................................................14

*Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co.*,
376 F.3d 399 (5th Cir. 2004)........................................................................................14

*Garcel, Inc. v. Hibernia Nat. Bank*
2002 WL 100605 (E.D.La. Jan. 24, 2002)................................................... 11, 15, 18

*Hickman v. Taylor*
329 U.S. 495 (1947)................................................................................................ 11, 12

*Oppenheimer Funds, Inc. v. Sanders*
437 U.S. 340 (1978)..................................................................................... 11, 12, 15, 18

*United States v. United Fruit Co.*
410 F.2d 553 (5th Cir. 1969)........................................................................................15

*Water Craft Management, L.L.C. v. Mercury Marine*,
361 F.Supp.2d 518 (M.D. La. 2004)............................................................................14

*Zenith Electronics Corp. v. Exzec, Inc.*
1998 WL 9181  (N.D.Ill 1998).....................................................................................15

FEDERAL RULES OF CIVIL PROCEDURE

Federal Rule of Civil Procedure 26(b)(1)...................................................................11

Federal Rule of Civil Procedure 26(c) ......................................................................19

LOUISIANA CIVIL CODE ARTICLES

La. Civ. Code Art. 1848 ...............................................................................................14

La. Civ.Code Art. 2024 ................................................................................................17

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| JUSTIN D. GUERRIERO,<br>                              Plaintiff | CIVIL ACTION NO.:  09-1846 |
| | SECTION: |
| VERSUS | JUDGE:  WALTER |
| AMERICAN NATIONAL PROPERTY AND<br>CASUALTY COMPANY,<br>                              Defendant | MAGISTRATE JUDGE:  HAYES |

## MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER TO PRECLUDE IMPROPER DISCOVERY ABOUT OTHER ANPAC AGENTS BY AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY

**MAY IT PLEASE THE COURT:**

### PRELIMINARY STATEMENT

Defendant, American National Property And Casualty Company ("ANPAC"), in accordance with Federal Rule of Civil Procedure 26(c), respectfully requests this Honorable Court to issue a protective order precluding plaintiff, Justin D. Guerriero, from conducting discovery and/or questioning witnesses about other past or present ANPAC agents or applicants, taking depositions of or seeking discovery from other past or present ANPAC agents or applicants, and precluding plaintiff and his counsel from contacting other past or present ANPAC agents or applicants regarding this litigation.  This Honorable Court found that plaintiff presented claims of alleged detrimental reliance, vice of consent based upon alleged "economic duress," and breach of an alleged subsequent modifying oral contract. (Rec.Doc. 33 at 9-10). None of the events allegedly supporting these claims took place in the presence of or were witnessed by any other ANPAC agent and they do not involve any other ANPAC agent. Plaintiff has already admitted that he voluntarily signed the written Agent Agreement and that

1

the Agent Agreement includes an integration clause. *See* Response to Requests for Admission Nos. 18, 30 and 31 (attached hereto as Exhibits "A" and "B").  Regardless, plaintiff still seeks to improperly interject alleged prior or contemporaneous negotiations or promises that he claims should vary or negate the terms of the Agent Agreement.  Plaintiff seeks to do this by harassing other ANPAC agents and applicants regarding their pre-contractual negotiations or arrangements—even though other ANPAC agents and applicants were not present, did not witness, and have no information about any event involving plaintiff's Agent Agreement.

Counsel for plaintiff's claim that information about other ANPAC agents is relevant to the detrimental reliance claim presented in this litigation is simply not true. (Rec.Doc. 47-1 at 3).  According to counsel for plaintiff, before plaintiff signed the Agent Agreement with ANPAC, he allegedly "was promised, among other things, that he would own his own set of business after five (5) years of relationship with Defendant." (Rec.Doc. 47-1 at 3).  Counsel for plaintiff argues that this somehow allows plaintiff to conduct discovery into the pre-contractual negotiations of other ANPAC agents or applicants who have no knowledge about the events surrounding plaintiff's execution of the fully integrated Agent Agreement.

Contrary to this unsupported argument, information regarding other ANPAC agents or applicants has no relevance to plaintiff's claim for detrimental reliance, is overly broadly and unduly burdensome, and is not likely to lead to the discovery of admissible evidence. Information regarding pre-contractual negotiations of other ANPAC agents or applicants is irrelevant and inadmissible parol evidence that is not subject to any exception under the parol evidence rule. Plaintiff is trying to discover and use inadmissible parol evidence for the detrimental reliance claim to prove an alleged prior or contemporaneous agreement that

purportedly varies or negates the fully integrated Agent Agreement.  The law simply does not allow this.

Plaintiff also seeks discovery from and about *other* ANPAC agents who have been terminated within the last ten years, documents and notices of termination that were given to *other* ANPAC agents, contact and personal information about *other* ANPAC agents, and miscellaneous information regarding other employment or attendance at social events by *other* ANPAC agents.  This discovery has absolutely nothing to do with the claims presented by plaintiff and is not likely to lead to the discovery of admissible evidence.

The discovery sought by plaintiff is improper, not relevant, overly broad and unduly burdensome, and not likely to lead to the discovery of admissible evidence.  Accordingly, this Honorable Court should grant ANPAC's request for a protective order precluding plaintiff from conducting discovery and/or questioning witnesses about other ANPAC agents or applicants, taking depositions of or seeking discovery from other ANPAC agents or applicants, and precluding plaintiff and his counsel from contacting other ANPAC agents or applicants regarding this litigation.

**FACTUAL BACKGROUND**

**I.    AGENT AGREEMENT IS A FULLY INTEGRATED CONTRACT**

On September 19, 2001, plaintiff admittedly exercised his "power of free choice" by voluntarily executing the written and fully integrated Agent Agreement between plaintiff and ANPAC. *See* Agent Agreement (Rec.Doc. 21-3); Response to Requests for Admission No. 59 (Exhibits "A" and "B").  The Agent Agreement includes provisions pertinent to the claim for detrimental reliance—provisions that plaintiff wants to avoid because they render this lawsuit meritless.  The Agent Agreement expressly addresses modification or amendment of the

contract; termination of the contract; non-waiver of rights; and includes a full integration clause

nominated as the "Sole Agreement" provision:

### H.    MODIFICATION OR AMENDMENT

1.    Any modification or amendment of this Agreement must be <u>in writing</u> and signed by you and by a duly authorized Company Headquarters Representative.

\*        \*        \*

3.    This Agreement shall be entered into in Springfield, Missouri, and the validity, construction, and performance of this Agreement shall be controlled by and construed under the laws of the State of Missouri.

(Rec.Doc. 21-3 at 4) (Section I(H)) (emphasis in original).

**SECTION III**
**TERMINATION**

A.    You or the Company may terminate this Agreement unilaterally without cause at any time by giving written notice to the other party at least thirty (30) days prior to the date fixed for termination.  The notice shall be delivered personally or mailed to the other party's last known address.

B.    You acknowledge that the Company has not expressly or by implication agreed to continue the term of this Agreement for any definite period of time.

(Rec.Doc. 21-3 at 5) (Section III(A) and (B))

**SECTION VI**
**RESERVED RIGHTS AND CONDITIONS**
**OF THE COMPANY**

\*        \*        \*

### D.    WAIVER

No act or forbearance on the part of the Company to enforce any of the provisions of this Agreement shall be construed as a modification of this Agreement nor shall the failure of either party to exercise any right or

privilege granted in this Agreement be considered as a waiver of that right or privilege.

*     *     *

**F.  SOLE AGREEMENT**

This Agreement, with the attached Schedules and Supplements, constitutes the sole agreement and supersedes all prior Agreements between you and the Company.

(Rec.Doc. 21-3 at 7) (Section VI(D) and (F)).

The terms of the Agent Agreement clearly establish that it is a fully integrated contract that superseded any prior agreements, negotiations, or understandings of the parties.  The Agency Agreement also does not allow any modification to the contract unless they are made in writing and signed by both parties.  Plaintiff does not contest that the Agent Agreement is a fully integrated contract, and in fact, plaintiff admitted that the Agent Agreement by its terms "constitutes the sole agreement and supersedes all prior Agreements between you and the Company" (subject to plaintiff's claim that the contract should be void). *See* Response to Requests for Admission No. 31 (Exhibits "A" and "B").  Accordingly, the discovery sought by plaintiff is improper, not relevant, and not likely to lead to the discovery of admissible evidence because it seeks to do nothing other than to impermissibly vary the contents of the fully integrated Agent Agreement through inadmissible parol evidence.

**II.  DISCOVERY PROPOUNDED BY PLAINTIFF THAT IMPROPERLY SEEKS INFORMATION ABOUT OTHER ANPAC AGENTS THAT IS NOT RELEVANT TO THIS LITIGATION**

Almost all the discovery propounded by plaintiff fails to seek relevant information about plaintiff and/or the specific claims asserted by plaintiff.  Most of the discovery sought by counsel for plaintiffs improperly seeks information about ***other*** ANPAC agents and applicants who have nothing to do with the allegations in this litigation and/or were not witnesses to any

5

relevant event.  Plaintiff also intends to question ANPAC witnesses during depositions about *other* ANPAC agents and applicants who have nothing to do with the allegations in this litigation.  The discovery about *other* ANPAC agents that is improperly sought by plaintiff also includes the following proposed topics for the Rule 30(b)(6) corporate deposition of ANPAC:

1.    The person with the most knowledge concerning the policies and procedures of the ***reasons that agents have been terminated in the State of Louisiana within the last ten (10) years***, including but not limited to the ***names, addresses and telephone numbers of said agents***.

2.    The person most familiar with the policies and procedures and/or directives of the Defendant which includes, but it [sic] not limited to ***what is told to agents as to how Defendant wants their [sic] policies sold***, i.e., mono-line, bi-line and/or tri-line, etc.

3.    The person who is most knowledgeable about ***any agent, in the last ten years, who has been dismissed without cause in the state of Louisiana***, including the ***name, address and telephone number of said individuals***.

4.    The person who is most knowledgeable about the policies and procedures of enticing persons in Ouachita Parish to come and work for Defendant, including ***all promises, assurances and enticements (both verbal and in writing) given to prospective agents during the last ten (10) years***.

5.    The person who is most knowledgeable about the policies and procedures of Defendant regarding ***agents having other employment or businesses***, which said other employment or business would take away from their work, ***including but not limited to*** Justin D. Guerriero and Johnnye Ford.

6.    The person who is most knowledgeable with the policy that agents must not be employed while performing as an agent of Defendant ***prior to actually being under written contract with the Defendant***.

7.    The person who is most knowledgeable with the ***daily agent activities and outside self-employment and/or business interests of Johnnye Ford***.

8.    The person most knowledgeable of the location and storing of any and ***all inter-office memos and /or communication of any type regarding the termination of employees in the State of Louisiana***, as well as the Retention Policy of Defendant regarding all such means of communication conducted by management level person [sic] of the Defendant and the consequences of an agent's failure to attend such functions.

9.      The person most knowledgeable concerning company policies and procedures of Defendant regarding ***agents being required to attend social events*** (outside of the scope of their employment).

\*          \*          \*

17.     The person most knowledgeable about the policy of Defendant that requires that persons desires [sic] of becoming an agent with Defendant which states that ***prospects cannot attend the primary education provided by Defendant*** to become one of its agents ***if said prospect is employed by any other person or entity at the time of said primary education required by Defendant before becoming an agent*** of Defendant.

*See* Attachment A to Rule 30(b)(6) Deposition of ANPAC (attached hereto as Exhibit "C") (emphasis added).

Counsel for plaintiff also propounded written discovery that improperly seeks information about other ANPAC agents and applicants that is not relevant to this litigation. On September 28, 2009, counsel for plaintiff propounded the first set of requests for production of documents. Only one of the four requests is focused upon plaintiff, Justin D. Guerriero. The remaining discovery requests seek records and files of *other* ANPAC agents, information about the types of insurance policies sold by *other* ANPAC agents, and all correspondence between ANPAC and *other* ANPAC agents that vaguely "relates to Justin Guerriero." The discovery sought by plaintiff is improper, not relevant, and not likely to lead to the discovery of admissible evidence.

## REQUEST FOR PRODUCTION NO. 1

Please produce the ***complete records of all agents of Defendant who operate or operated as their [sic] insurance agents for Defendant, in an area within twenty-five (25) miles of zip code 71201*** for the period from September 19th, 2001 through February of 2007, including all email correspondence to and from Defendant to said agents, their records showing the type of business that they have written during that period of time, i.e., and how many mono-line, bi-line, tri-line accounts they have written during said period.

\*          \*          \*

7

### REQUEST FOR PRODUCTION NO. 3

Please produce all recordings, tapes, notes, minutes, inter-office memos, etc. of ***all meetings***, whether in person or by telephone, ***by and between Defendant and any agent who lives within twenty-five (25) miles of zip code 71201*** for the period of time from September 19th, 2001 through February of 2007, and from June 1st, 2009 through present date, which concern Justin Guerriero as a part of said correspondence, etc., ***or that deal with the Defendant's policy on writing insurance***.

### REQUEST FOR PRODUCTION NO. 4

Please produce ***all correspondence*** including facsimile transmittals, emails, and all interoffice memos ***between any age4nt [sic] and/or employee of Defendant*** excluding only correspondence to and from Defendant's counsel of record, ***that relates to Justin Guerriero*** since Defendant first became aware of Justin Guerriero's claims that relate to this lawsuit.

*See* Requests for Production of Documents Nos. 1, 3 and 4 (attached hereto as Exhibit "D") (emphasis added).

On June 2, 2010, counsel for plaintiff propounded the second set of requests for production of documents. The only request presented seeks the records of ***other*** ANPAC agents located in Ouachita Parish and confidential business and personal information on the type of policies these other ANPAC agents were selling. Plaintiff is currently an agent for Allstate Insurance Company and seeks this irrelevant information as a direct competitor against ANPAC and other ANPAC agents. This information is confidential and not relevant to the claims presented by plaintiff in this litigation, even though it may improperly provide some commercial benefit to plaintiff who is working as a direct competitor against other ANPAC agents. The second set of requests for production is improper, not relevant, and not likely to lead to the discovery of admissible evidence.

### REQUEST FOR PRODUCTION NO. 1

Please produce that portion of the ***records of the Agents of Defendant who were located in Ouachita Parish, Louisiana*** for the period of September 9th,

8

2001 through February of 2007, with specific reference to ***all email and other correspondence between said agents and Defendant that show the type of business they have written*** during that period of time, i.e., mono-line, bi-line, tri-line accounts and all records showing any comments or mentions of Justin G. Guerriero.

*See* Plaintiffs' Second Set of Requests for Production No. 1 (attached hereto as Exhibit "E") (emphasis added).

On July 16, 2010, counsel for plaintiff propounded the third (incorrectly identified as the second) set of requests for production of documents. The only request presented seeks the names, addresses and phone numbers for all terminated agents and "documentation of all notices of termination given to said Agents." The third set of requests for production is improper, not relevant, and not likely to lead to the discovery of admissible evidence.

### REQUEST FOR PRODUCTION NO. 1

Please produce names, addresses and phone numbers for ***all agents that have been terminated***, including but not limited to documentation of all notices of termination given to said Agents during the period of time from 2001 through 2007.

*See* Plaintiffs' Second [sic] Set of Requests for Production Propounded Unto Defendants No. 1 (attached hereto as Exhibit "F") (emphasis added).

On July 16, 2010, counsel for plaintiff propounded the first set of interrogatories. The interrogatories seek information about attendance at "Pre-Career Training Courses" by "***any applicant***" seeking to become an ANPAC agent and the personal and contact information for applicants who were allowed to remain "employed by another company or entity" while attending the "Pre-Career Training Courses." The first set of interrogatories is improper, not relevant, and not likely to lead to the discovery of admissible evidence.

### INTERROGATORY NO. 1

Please state if the Defendant has ever allowed ***any applicant seeing [sic] to become an Agent for Defendant)*** to attend the "Pre-Career Training

9

Courses" required by Defendant under the "Agent Agreement Before Appointment" (Exhibit B to Defendant's Discovery to Plaintiff) while said applicant was employed by another company or entity.

**INTERROGATORY NO. 2**

If the answer to Interrogatory No. 1 is in the affirmative, please give the ***names, address and telephone number of said person Defendant claims it allowed to remain employed with some other person or entity while attending the Defendant's required "Pre-Career Training Courses"***, which is required under the Defendant's Agent Agreement Before Appointment" document (Exhibit B to Defendant's Discovery to Plaintiff).

*See* Plaintiffs' First Set of Interrogatories Propounded Unto Defendants No. 1 (attached hereto as Exhibit "G") (emphasis added).

In addition to the written discovery and corporate deposition of ANPAC, counsel for plaintiff also has requested depositions from ANPAC witnesses during which he intends to ask questions regarding other ANPAC agents.  Even before this lawsuit was filed, counsel for plaintiff made it clear that he intended to depose ***all*** ANPAC agents within a twenty-five mile radius regardless that these individuals have no relevant information. *See* Correspondence from Counsel for Plaintiff dated June 11, 2009 ("***I will be taking the depositions of . . . all of the agents (both past and present)*** who are within twenty-five (25) miles of our zip code, 71201, (and I have a list of them)") (attached hereto as Exhibit "H") (emphasis added).  According to counsel for plaintiff, "unless [ANPAC was] ready to pay a substantial amount of financial compensation," plaintiff would not be interested in discussing settlement.  Absent payment of "a substantial amount of financial compensation," therefore, plaintiff would "tak[e] the depositions of . . . all of the agents (both past and present) who are within twenty-five (25) miles of our zip code, 71201, (and I have a list of them)" *Id.*  While it was viewed as pre-litigation

10

posturing at the time, counsel for plaintiff has now moved forward with this harassing and improper fishing expedition.

Almost all of plaintiff's discovery and the requested depositions of ANPAC witnesses improperly seek information about pre-contractual negotiations involving *other* ANPAC agents and applicants, the identity of *other* ANPAC agents who have been terminated within the last ten years, documents and notices of termination that were given to *other* ANPAC agents, contact and personal information about *other* ANPAC agents and applicants, and miscellaneous information regarding other employment or attendance at social events by *other* ANPAC agents.  Counsel for plaintiff seeks this information while his son is a direct competitor with ANPAC and current ANPAC agents—plaintiff is currently an agent for Allstate Insurance Company.  Plaintiff also improperly seeks discovery about agents who may have other employment or businesses, and the daily agency activities and businesses of Johnnye Ford. This discovery has absolutely nothing to do with the claims presented by plaintiff and is not likely to lead to the discovery of admissible evidence.  A protective order is necessary to prevent this overly broad and abusive discovery that is being pursued solely for purposes of harassment and to improperly multiple these proceedings and increase the cost of litigation.

## ARGUMENT

## I.  DISCOVERY HAS "ULTIMATE AND NECESSARY BOUNDARIES" THAT SHOULD BE ENFORCED BY PROTECTIVE ORDER

"Unless otherwise limited by court order . . . Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). "At the same time, 'discovery, like all matters of procedure, has ultimate and necessary boundaries.'" *Oppenheimer Funds, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)); *see also Garcel, Inc. v. Hibernia Nat. Bank*, 2002 WL

100605, *2 (E.D.La. Jan. 24, 2002) (quoting *Hickman*, 329 U.S. at 507) ("Nevertheless, discovery does have 'ultimate and necessary boundaries'"). "Discovery of matter not 'reasonably calculated to lead to the discovery of admissible evidence' is not within the scope of Rule 26(b)(1)." *Oppenheimer Funds*, 437 U.S. at 351-52.  A party should be precluded from conducting discovery of information that "ordinarily cannot be considered, and would not lead to information that could be considered, by a court or jury in deciding any issues." *Id.* at 352. Under such circumstances, a protective order should issue "protect[ing] a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . [by] forbidding the discovery or disclosure." Fed.R.Civ.P 26(c)(1)(A).

## II.   DISCOVERY REGARDING PRE-CONTRACTUAL NEGOTIATIONS AND AGREEMENTS WITH OTHER ANPAC AGENTS IS NEITHER RELEVANT NOR LIKELY TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE

Plaintiff seeks discovery regarding pre-contractual negotiations involving all other ANPAC agents in Ouachita Parish and/or within a twenty-five mile radius of zip code 71201, and information on pre-contractual agreements and arrangements regarding "any applicant" seeking to become an ANPAC agent.  Counsel for plaintiff argues that pre-contractual negotiation, agreements and/or arrangements with all other past or present ANPAC agents or applicants is relevant to plaintiff's detrimental reliance claim.  According to counsel for plaintiff, before plaintiff signed the Agent Agreement with ANPAC, he allegedly "was promised, among other things, that he would own his own set of business after five (5) years of relationship with Defendant." (Rec.Doc. 47-1 at 3).  Counsel for plaintiff argues that this somehow allows plaintiff to conduct discovery into the affairs of other ANPAC agents who have no knowledge about the events surrounding plaintiff's execution of the fully integrated Agent Agreement.

12

> Plaintiff contends that he is entitled to know *if the __other prospective Agent's__ [sic], who have now become Agents for defendant, were promised similar assurances* in order to establish that the promises which Plaintiff claims did in fact happen.  In other words, Plaintiff is entitled to show the *modus operandi* of the Defendant in soliciting prospects to become Agent's for the Defendant *in support of Plaintiff's claim for __detrimental reliance__*.

(Rec.Doc. 47-1 at 3).  Counsel for plaintiff admits that the sole reason for requesting this information is to purportedly "corroborate" that pre-contractual promises were made to plaintiff, regardless that none of the other ANPAC agents were witnesses to the pre-contractual negotiations with plaintiff.

> [M]y sole reason for wanting the information is and always;; [sic] has been to show the policies and "modus operanti [sic]" of the Defendant to *__all__ Agents in the area where my son worked __when they were prospects__*; and, that would then corroborate his testimony on those points, i.e., including *what said prospective agents were promised and assured of as my son claims he was*. Therefore it is very relevant and admissible since it would show that my son's testimony in this regard was credible by establishing a pattern of your client's behavior.

*See* E-mail from Counsel for Plaintiff dated June 22, 2010 at 12:35 p.m. (attached hereto as Exhibit "I") (emphasis added.)

Contrary to this unsupported argument, information regarding other ANPAC agents has no relevance to plaintiff's claim for detrimental reliance, is overly broadly and unduly burdensome, and is not likely to lead to the discovery of admissible evidence.  Information regarding pre-contractual negotiations of both plaintiff and other ANPAC agents is irrelevant and inadmissible parol evidence that is not subject to any exception under the parol evidence rule.  Counsel for plaintiff admittedly wants to use information about the pre-contractual negotiations of other agents to "corroborate" plaintiff's anticipated testimony that similar pre-contractual negotiations took place and promises were made to plaintiff that were not in the Agent Agreement.  In essence, plaintiff is seeking discovery of parol evidence from other ANPAC agents that purportedly will be used to vary or negate the terms of the fully integrated

13

Agent Agreement as part of the detrimental reliance claim.  Not only is information from other ANPAC agents about pre-contractual negotiations not relevant or admissible, plaintiff's own testimony in this regard is inadmissible parol evidence.

Contrary to the position of plaintiff, the law is clear that "***contemporaneous oral agreements or understandings*** between the parties which are not made part of the written contract do not qualify as an exception to the parol evidence rule." *Crochet v. Pierre*, 94-543 (La.App. 5 Cir. 11/29/94), 646 So.2d 1222, 1225 (emphasis added).  "[P]arol evidence is [also] not admissible to show ***prior* oral agreements** that contradict the terms of a written contract." *Water Craft Management, L.L.C. v. Mercury Marine*, 361 F.Supp.2d 518, 550-51 (M.D.La. 2004) (emphasis added).  Under the Louisiana Civil Code, "testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature." La.Civ.Code Art. 1848.  Importantly, a claim for detrimental reliance may not be sustained where "the parties' fully integrated contract define[s] the relationship of the parties" because "any reliance on outside assurances that moved beyond the well-defined relationship [i]s unreasonable as a matter of law." *Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins.Co.*, 376 F.3d 399, 403-404 (5th Cir. 2004).  In summary, plaintiff is trying to discover irrelevant and inadmissible parol evidence from other ANPAC agents in an attempt to "corroborate" plaintiff's testimony about an alleged prior or contemporaneous agreement between plaintiff and ANPAC—even though no other ANPAC agent was a witness to this alleged agreement—that purportedly would vary or negate the terms of the fully integrated Agent Agreement in support of plaintiff's detrimental reliance claim.  The law simply does not allow this.

14

The discovery sought by plaintiff regarding pre-contractual negotiations involving all other ANPAC agents in Ouachita Parish and/or within a twenty-five mile radius of zip code 71201 and other applicants is improper, not relevant, overly broad and unduly burdensome, and not likely to lead to the discovery of admissible evidence.  "[W]hile it is true that relevance in discovery is broader than that required for admissibility at trial, *__the object of inquiry must have some evidentiary value__* before an order to compel disclosure of otherwise inadmissible material will issue."  *Garcel, Inc.,* 2002 WL 100605 at *2 (quoting *Zenith Electronics Corp. v. Exzec, Inc.*, 1998 WL 9181, *3 (N.D.Ill 1998) (emphasis added).  The discovery about other ANPAC agents and applicants has no "evidentiary value" because counsel for plaintiff's "sole reason" for obtaining this information is to "corroborate" plaintiff's testimony of an alleged prior or contemporaneous agreement that purportedly varied or negated the terms of the fully integrated Agent Agreement, which testimony itself is admissible parol evidence.  Counsel for plaintiff also seeks this confidential and proprietary business information regarding engagement of other agents and the business they handle while his son is a direct competitor with ANPAC and current ANPAC agents—plaintiff is currently an agent for Allstate Insurance Company. *See United States v. United Fruit Co.*, 410 F.2d 553, 556 (5th Cir. 1969) (finding that the courts "will exercise their discretion to avoid unnecessary disclosure of such information, particularly where the action is between competitors.").  Plaintiff should be precluded from conducting discovery from and about ***other*** ANPAC agents and applicants because such information "ordinarily cannot be considered, and would not lead to information that could be considered, by a court or jury in deciding any issues." *Oppenheimer Funds*, 437 U.S. at 352.  Therefore, a protective order should issue precluding this improper and irrelevant discovery regarding ***other*** ANPAC agents and applicants.

15

## III.   DISCOVERY REGARDING TERMINATION OF OTHER ANPAC AGENTS IS NEITHER RELEVANT NOR LIKELY TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE

Plaintiff also seeks discovery from and about *other* ANPAC agents who have been terminated within the last ten years, documents and notices of termination that were given to *other* ANPAC agents, contact and personal information about *other* ANPAC agents, and miscellaneous information regarding other employment or attendance at social events by *other* ANPAC agents.  ANPAC already produced hundreds of pages of documents, letters and e-mails regarding plaintiff's agency relationship and termination by ANPAC. *See* ANPAC's Second Supplemental Response to Request for Production No. 2, which identified bates numbered documents ANPAC 000001—ANPAC 000056; ANPAC—000064; ANPAC—000066 to ANPAC—000084; ANPAC—000086 to ANPAC—000094; ANPAC—000096 to ANPAC—000121; ANPAC—000129 to ANPAC—000160; ANPAC—000162 to ANPAC—000206; ANPAC—000211 to ANPAC—000213; ANPAC—000235 to ANPAC—000240; ANPAC—000254 to ANPAC—000255 (attached hereto as Exhibit "J").   Discovery regarding the termination of *other* ANPAC agents, however, has absolutely nothing to do with the claims presented by plaintiff and is not likely to lead to the discovery of admissible evidence.

ANPAC initially issued a termination notice to plaintiff dated March 29, 2006, which was subsequently rescinded by letter dated April 19, 2006.  *See* Termination Letter dated March 29, 2006 and Rescission Letter dated April 19, 2006 (attached hereto respectively as Exhibits "K" and "L").  The following year, ANPAC issued a second termination letter to plaintiff dated February 7, 2007, which termination became effective on March 17, 2007—almost a year to the date after the original termination letter.  *See* Termination Letter dated February 7, 2007

16

(attached hereto as Exhibit "M").  The termination letters dated March 29, 2006 and February 7, 2007 both included the following statement:

> You are hereby notified that your Agent Agreement will be terminated in accordance with Section III—Termination, A. You or the Company may terminate this Agreement unilaterally without cause at any time by giving written notice to the other party at least thirty (30) days prior to the date fixed for termination.

*See* Exhibits "K" and "M".

Plaintiff admitted that the termination letters dated March 29, 2006 and February 7, 2007 and the rescission letter dated April 19, 2006 did not breach any provision of the Agent Agreement (subject to plaintiff's claim that the contract should be void). *See* Response to Requests for Admission Nos. 43, 47 and 52 (attached hereto as Exhibits "A" and "B"). Moreover, the Agent Agreement did not specify any term or duration for the contract, and plaintiff admitted that the rescission letter did not include an agreement by ANPAC to extend the Agency Agreement for any specified term or duration. *See* Agent Agreement (Rec.Doc. 21-3) and Response to Requests for Admission No. 50 (Exhibits "A" and "B").  Plaintiff also admits that there was no subsequent modifying agreement that the agent relationship between plaintiff and ANPAC was for a specified term or duration that would have precluded ANPAC from terminating the agent relationship effective on March 17, 2007. *See* Plaintiff's Answer to Interrogatory No. 8 (attached hereto as Exhibits "N" and "O").  Under these circumstances, ANPAC was also authorized by law to terminate at will the agency agreement with plaintiff upon providing reasonable notice regardless of any provision in the Agent Agreement. *See* La.Civ.Code Art. 2024 ("A contract of unspecified duration may be terminated at the will of either party by giving notice, reasonable in time and form, to the other party.").  Plaintiff has failed to establish that discovery directed to the termination of ***other*** ANPAC agents has

anything to do with these facts and/or the authorized termination of the agent relationship between plaintiff and ANPAC under the terms of the Agent Agreement or applicable law.

Discovery regarding the termination of other ANPAC agents is not relevant to the claims presented and has no "evidentiary value." *Garcel, Inc.,* 2002 WL 100605 at *2. None of the other ANPAC agents were witnesses to the termination of plaintiff and they were not involved with the preparation or issuance of the termination and rescission letters. None of the other ANPAC agents were directly or indirectly involved with the termination of plaintiff, and plaintiff has presented no evidence or allegations regarding the involvement of any other ANPAC agent in plaintiff's termination. None of the other agents were involved in any meetings with plaintiff and Robert Turgeon or ANPAC after issuance of the first termination letter on March 29, 2006. The remaining miscellaneous discovery requests regarding other employment or attendance at social events by *other* ANPAC agents is equally irrelevant and has nothing to do with the claims presented by plaintiff.

The business relationship between ANPAC and these other agents, and personal information about these agents (including information about termination), should not be fodder for plaintiff's improper fishing expedition. Plaintiff should be precluded from conducting discovery regarding the termination of *other* ANPAC agents because such information "ordinarily cannot be considered, and would not lead to information that could be considered, by a court or jury in deciding any issues." *Oppenheimer Funds*, 437 U.S. at 352. A protective order should be issued because the discovery and depositions sought by plaintiff regarding information about other ANPAC agents has no legitimate purpose, is not likely to lead to admissible evidence, and is being pursued solely for purposes of harassment and to improperly multiple these proceedings and increase the cost of litigation.

## CONCLUSION

Defendant, American National Property And Casualty Company ("ANPAC"), in accordance with Federal Rule of Civil Procedure 26(c), respectfully requests this Honorable Court to issue a protective order precluding plaintiff, Justin D. Guerriero, from conducting discovery and/or questioning witnesses about other past or current ANPAC agents or applicants, taking depositions of or seeking discovery from other past or current ANPAC agents or applicants, and precluding plaintiff and his counsel from contacting other past or current ANPAC agents or applicants regarding this litigation.  The discovery sought by plaintiff is improper, not relevant, overly broad and unduly burdensome, and not likely to lead to the discovery of admissible evidence.  Under such circumstances, a protective order should issue "protect[ing] a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . [by] forbidding the discovery or disclosure." Fed.R.Civ.P 26(c)(1)(A). A protective order is warranted in this case to protect ANPAC from the harassing, irrelevant, overly broad, and unduly burdensome discovery sought by plaintiff and to preclude written discovery and depositions that seek irrelevant information regarding other ANPAC agents or applicants.

Respectfully submitted,

**LARZELERE PICOU WELLS**
    **SIMPSON LONERO, LLC**
Suite 1100 - Two Lakeway Center
3850 N. Causeway Boulevard
Metairie, LA   70002
Telephone:     (504) 834-6500
Fax:  (504) 834-6565

**BY:**    */s/ Jennifer R. Kretschmann*
    **JAY M. LONERO, T.A. (No. 20642)**
        **jlonero@lpwsl.com**
    **CHRISTOPHER R. PENNISON (No. 22584)**
        **cpennison@lpwsl.com**
    **JENNIFER R. KRETSCHMANN (No. 28646)**
        **jkretschmann@lpwsl.com**

    **AND**

    **BLEICH & BURNETT, APLC**
112 West Louisiana Avenue
Ruston, LA  71270
Telephone:     (318) 255-1234
Fax:             (318) 255-6124
**E. JOSEPH BLEICH (No. 03129)**
    **joe@northlalaw.com**

**ATTORNEYS FOR AMERICAN NATIONAL
PROPERTY AND CASUALTY COMPANY**

20

## CERTIFICATE OF SERVICE

I hereby certify that on this 12<u>th</u> day of <u>August</u>, 2010, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel registered for electronic service.  I further certify that I have served a copy of the foregoing pleading on all parties to this proceeding not registered for electronic service, by e-mailing, faxing, and/or mailing the same by United States mail, properly addressed and first class postage prepaid.

_/s/ Jennifer R. Kretschmann_

21