UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **JUSTIN D. GUERRIERO** | \* | **CIVIL ACTION NO.  09-1846** |
| **VERSUS** | \* | **JUDGE DONALD E. WALTER** |
| **AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY** | \* | **MAG. JUDGE KAREN L. HAYES** |

### MEMORANDUM ORDER

Before the undersigned Magistrate Judge, on reference from the District Court, are motions to compel discovery [doc. # 47] and for protective order [doc. # 48] filed by plaintiff Justin Guerriero, and a motion for protective order [doc. # 53] filed by defendant, American National Property and Casualty Company ("ANPAC").[1]  The motions are opposed.  For reasons stated below, the motions for protective order [doc. #s 48 & 53] are GRANTED IN PART and the motion to compel [doc. # 47] is GRANTED.

### Background

On September 28, 2009, Justin D. Guerriero filed the instant "Petition for Damages Based on Detrimental Reliance" against ANPAC in the Fourth Judicial District Court for the Parish of Ouachita, State of Louisiana.  Plaintiff contends that in 2001 ANPAC enticed him to leave his position as an agent with Farm Bureau Insurance Company with a promise that after five years he

---

[1] As these motions are not one of the motions excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court.  Any appeal must be made to the district judge in accordance with Rule 72(a) and LR 74.1(W).

would own his own book of business. (Petition, ¶¶ 1-2). Consequently, plaintiff and ANPAC entered into an agreement on September 19, 2001. *Id*. at ¶ 3.

While still employed as an ANPAC agent in 2005, plaintiff began a part-time job managing workers at a local warehouse. *Id*. at ¶ 9. In March 2006, however, ANPAC sent plaintiff a termination letter. *Id*. at ¶ 10. After discussing the matter with ANPAC, plaintiff received an "ultimatum that if he would quit his part-time job [ANPAC] would not terminate Plaintiff." *Id*. Relying upon this assurance, plaintiff quit his "very lucrative" part-time job where he was earning "$50,000.00 per year." *Id*. Nonetheless, approximately ten months later, ANPAC permanently severed its relationship with plaintiff. *Id*.

Guerriero seeks to recover damages from ANPAC for his loss of opportunity and income from his $50,000 per year part-time job that he gave up, and an award for losses that he sustained when ANPAC lured him away from his position with Farm Bureau. *Id*. at ¶¶ 13-14.

On October 23, 2009, ANPAC removed the case to federal court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. [doc. # 1]. On November 19, 2009, ANPAC filed a motion to dismiss for failure to state a claim upon which relief can be granted, in which it argued, *inter alia*, that under the applicable laws of Missouri or Louisiana, a claim for detrimental reliance must be dismissed as a matter of law where a written contract exists that governs the relationship for which damages are sought. (ANPAC M/Dismiss; [doc. # 21]). ANPAC argued that "plaintiff's reliance on promises made outside of [the] unambiguous, fully integrated agreement [i]s unreasonable as a matter of law." (ANPAC M/Dismiss, Memo., pg. 13) (quoting *Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins.Co.*, 376 F.3d 399, 403 (5th Cir. 2004).

2

Nevertheless, the undersigned recommended that the motion to dismiss be denied, among other reasons, because of potentially applicable exceptions to the parol evidence rule. (March 1, 2010, R&R [doc. # 33]). Indeed, under Louisiana law, "in the interest of justice," parol evidence "may be admitted to prove such circumstances as a vice of consent, or a simulation, or to prove that the written act was modified by a subsequent and valid oral agreement." La. Civ. Code Art. 1848 (emphasis added). The undersigned added that "while plaintiff may face an uphill climb to demonstrate that he reasonably relied upon an oral representation(s) that purportedly modified the terms of the parties' written agreement, *at least at this stage*, plaintiff . . . stated a claim for promissory estoppel/detrimental reliance under Missouri or Louisiana law, sufficient to 'raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" (March 1, 2010, R&R [doc. # 33]). Despite defendant's vociferous objections to the report and recommendation, the district court concurred with the report, and denied the motion to dismiss. (March 23, 2010, Order [doc. # 39]).

The parties are now again before the court – this time to resolve an impasse regarding the scope of discovery. On August 3, 2010, plaintiff filed the instant motions to compel discovery and for protective order. ANPAC responded on August 12, 2010, with its own motion for protective order. ANPAC also sought, and obtained, a court order consolidating its motion for protective order with plaintiff's motion to compel, because the motions "involve[d] the same subject matter and discovery propounded by the plaintiff in this matter." *See* M/Consolidate [doc. # 54] and Aug. 17, 2010, Order [doc. # 56]. Following delays for additional briefing,[2] the

---

[2] The briefing period closed on September 14, 2010. (Notice of Motion Setting [doc. #s 51, 52, & 57].

matters are now before the court.

## Law

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).[3] The courts understand the rule to provide for broad and liberal discovery. *See Schlagenhauf v. Holder*, 379 U.S. 104, 114-5 (1964); *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385 (1947). Discovery is neither limited to issues raised by the pleadings, nor to the merits of the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389 (1978). However, discovery does have its limits. *Id*.

A party objecting to discovery "must state with specificity the objection and how it relates to the particular request being opposed, and not merely that it is 'overly broad and burdensome' or 'oppressive' or 'vexatious' or 'not reasonably calculated to lead to the discovery of admissible evidence.'" *Reyes v. Red Gold, Inc.* 2006 WL 2729412 (S.D. Tex. Sept. 25, 2006). Further,

> [o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (I) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

---

[3] Subpoenas issued for discovery purposes are subject to the discovery limitations set forth in Rule 26(b). *Durand v. Wal-Mart Associates, Inc.*, 2009 WL 2181258 (S.D. Miss. July 22, 2009) (citation omitted).

> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2)(C).

Upon a showing of good cause, a court may issue an order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The party seeking the protective order must establish that good cause exists for the entry of the order by making a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193 (1981); *see also In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199 (1984).

## Discussion

**I.    Plaintiff's Motion for Protective Order**

On June 17, 2010, ANPAC issued a subpoena duces tecum directed to Allstate Insurance Company ("Allstate") seeking production of documents associated with plaintiff's employment or independent contractor agreement with Allstate. Specifically, the subpoena sought,

> 1. All records or documents referring or related to Justin D. Guerriero's employment, independent contractor agreement, agent agreement, producer agreement or other contractual relationship with Allstate Insurance Company and the termination of that employment, independent contractor agreement, agent agreement, producer agreement, or other contractual relationship with Allstate Insurance Company including without limitation:

    (a)    any personnel, agent, producer, independent contractor or employee records and/or file(s);

    (b)    any application for appointment or employment;

    (c)    performance reviews and appraisals;

    (d)    employment contract, independent contractor agreement, agent agreement, or producer agreement;

    (e)    pay plans or commission agreements;

    (f)    attendance records;

    (g)    disciplinary or counseling records, memoranda or notes;

    (h)    personnel change notices;

    (I)    complaints or grievances by him or about him by others; and

    (j)    all other documents which are maintained in personnel, agent, producer, or employee files as a matter of Allstate Insurance Company's customary practices.

2)    All records or documents referring or related to Justin D. Guerriero's compensation and earnings arising from his employment, contract or agreements with Allstate Insurance Company, including without limitation; all payroll records, commission reports and backup documentation, bonus payments, form W-2s, form 1099s or other earnings reports submitted regarding Justin D. Guerriero to state or federal tax agencies.

Subpoena to Produce Documents, Def. Opp. Memo., Exh. A [doc. # 61-2].

    Counsel for plaintiff objected to the discovery sought in the Allstate subpoena; thus, the parties engaged in several discovery conferences, as required by Local Rule 37.1W. According to ANPAC, Allstate was ready to comply with the subpoena duces tecum by the return date of July 19, 2010; however, counsel for ANPAC instructed Allstate to defer production pending resolution of the discovery dispute with counsel for plaintiff. *See* July 6, 2010, Letter from defense counsel to counsel for Allstate; Def. Opp. Memo., Exh. C.

Before addressing the merits, the court pauses to observe that a party not in possession of the materials subpoenaed ordinarily does not enjoy standing to oppose the subpoena, unless he has a personal right or privilege to the materials subpoenaed. *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir.1979). Moreover, because the subpoena was issued by the Middle District of Louisiana, this court lacks authority to act upon the subpoena. *See* Fed.R.Civ.P. 45(c)(3)(A) ("the issuing court must quash or modify a subpoena . . ." and Rule 45(c)(3)(B) ("the issuing court may on motion, quash or modify the subpoena . . ."); *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 5:07CV191, 2008 WL 2944671 (E.D. Tex. July 25, 2008) (motions to quash and protective order denied because only the issuing court has power to act on its subpoenas). Here, however, plaintiff has filed a motion for protective order, a procedural vehicle that authorizes this court to place reasonable limits on the discovery process. *See Durand, supra*.

In his motion for protective order, plaintiff emphasizes that ANPAC has issued numerous discovery requests to plaintiff, and has sought and obtained his employment records from two former employers. Plaintiff draws the line, however, with his current employer/principal, Allstate. Plaintiff contends that the discovery sought from Allstate has nothing to do with plaintiff's claims against ANPAC, and that it is simply an attempt to embarrass plaintiff.

Plaintiff argues that any records regarding his compensation or earnings at Allstate are irrelevant because his claim for loss of income does not extend to the period that he was employed by Allstate. In his answers to interrogatories, plaintiff stressed that he **"seeks no loss of income from the point in time Plaintiff began his employment with Allstate Insurance Company**." (Pl. Ans. to Interr. # 3; Def. Opp. Memo., Exh. D) (emphasis in original).[4]

---

[4] Guerriero began his employment with Allstate effective July 1, 2008. *Id*.

7

Nonetheless, ANPAC seems to maintain that the compensation records remain relevant because of the court's resolution of plaintiff's motion to remand,[5] and because plaintiff has not amended his complaint to limit his claim for loss of income and opportunity. However, plaintiff has offered to formally stipulate that his loss of income ended at the time that he began his employment with Allstate. Moreover, post-removal events cannot deprive the court of subject matter jurisdiction. Accordingly, the discovery sought in paragraph two of ANPAC's subpoena to Allstate will be rendered irrelevant and not discoverable, once plaintiff signs a binding stipulation, approved as to form by ANPAC, confirming that he has no claim for loss of income or opportunity from the time that he began his employment with Allstate.[6] The parties shall effect same within the next seven days from the date of this order.

      Plaintiff further argues that his other employment records with Allstate are not discoverable because they are not relevant to his claims or his state of mind during the relevant period. ANPAC disagrees; it argues that plaintiff's application with Allstate could contain representations made by plaintiff regarding his prior employment with ANPAC (i.e. his reasons for leaving). Furthermore, plaintiff's employment/agency agreement with Allstate could prove relevant if it contains a termination at will clause, especially now that plaintiff contends that he objected to the inclusion of the termination provision in his agreement with ANPAC. *See* Pl. Opp. to Def. M/Protective Order [doc. # 55]. If, as plaintiff has now disclosed, he objected to the clause with ANPAC, it stands to reason that, after his experience with ANPAC, he would have

---

[5] *See* November 18, 2009, Memorandum Ruling [doc.# 19] (finding that the amount in controversy exceeded the jurisdictional minimum at the time of removal).

[6] Needless to say, the parties shall confer in good faith to agree on the form of the stipulation.

found a similar clause with Allstate even more unpalatable.

Allstate's records also remain potentially relevant to determine what promises and inducements were made to plaintiff. If plaintiff signed an agreement with Allstate, without any promise that he would own his own book of business after a certain period of time, this could support an inference that the alleged promise by ANPAC was not a significant consideration behind plaintiff's decision to sign the agreement with ANPAC.

Plaintiff contends that rather than burdening Allstate with the subpoena, ANPAC simply could obtain this information from him. It suffices to say, however, that Allstate may have retained pertinent records that plaintiff did not. Moreover, to the extent that plaintiff is "embarrassed" by the production request to his current employer/principal, any such damage occurred at the time that the subpoena was served on Allstate. In fact, by all accounts, Allstate appears ready and willing to produce the requested documents.

Nevertheless, discovery has its limits. In response to plaintiff's motion for protective order, ANPAC has failed to support the potential relevance of topics 1(c) or 1(e)-(j). Thus, this requested discovery *upon a non-party* is necessarily annoying and harassing, and imposes an undue burden upon the parties and non-parties to whom it is directed. *See* ANPAC Reply Memo., pg. 4 [doc. # 60]) (citations omitted).

For the foregoing reasons, ANPAC's subpoena to Allstate is restricted to topics 1(a), 1(b), & 1(d) – provided plaintiff timely executes the stipulation addressed above. Moreover, topic 1(a) is limited to documents regarding plaintiff's initial contacts/communications, application and appointment as an Allstate agent.

## II. Plaintiff's Motion to Compel and ANPAC's Motion for Protective Order

Plaintiff seeks an order compelling ANPAC to

1. Immediately produce available dates to Plaintiff's Counsel for the taking of the deposition of Johnnye Ford and Robert Turgeon, and for the taking of a designated Corporate representative for Defendant's 30(b)(6) deposition.

2. Immediately provide to Plaintiff's Counsel the names and addresses of all of Defendant's Agents located in Ouachita Parish, Louisiana.

(Pl. M/Compel, Memo., pgs. 1-2).

On the flip side, ANPAC seeks to limit the scope of plaintiff's discovery requests, essentially on grounds of relevance. ANPAC requests a protective order "precluding plaintiff from conducting discovery and/or questioning witnesses about other ANPAC agents or applicants, taking depositions of or seeking discovery from other ANPAC agents or applicants, and precluding plaintiff and his counsel from contacting other ANPAC agents or applicants regarding this litigation." (Def. M/Protective Order, Memo., pg. 3).

In its motion, ANPAC highlights the numerous discovery requests that plaintiff has issued since the suit's inception,[7] and which ANPAC finds objectionable. However, in his response to ANPAC's motion, plaintiff's counsel stresses that, pursuant to the parties' several "meet and confer" sessions – the latest occurring on August 12, 2010, he has winnowed down his requested discovery to four areas:

1) Whether ANPAC promised (or similarly promised) its prospective agents in Ouachita Parish (before they became ANPAC agents) that, within five years, they would own their own book of business. To obtain this information, plaintiff seeks the names and addresses

---

[7] Plaintiff served ANPAC with discovery requests on, or about September 28, 2009, June 2, 2010, and July 16, 2010.

        of ANPAC's agents in Ouachita Parish.[8] He also wishes to question ANPAC during its 30(b)(6) deposition about the promises, assurances, and enticements that were made to prospective agents.

   2)    The right to question Robert Turgeon and Johnnye Ford concerning plaintiff's "part-time employment, any threats or conditions made by either of them in connection therewith or with any other threats or conditions concerning plaintiff's employment," in addition to any overtures made by them to plaintiff before he became an ANPAC agent and when he was compelled to leave his part-time job.

   3)    In connection with ANPAC's 30(b)(6) deposition, whether a prospective agent can undergo training with ANPAC, without having first terminating prior employment.

   4)    In connection with ANPAC's 30(b)(6) deposition, plaintiff seeks to discern whether, for the past ten years, any agents have been dismissed without cause.

Pl. Resp. to M/Protective Order [doc. # 55].

Plaintiff waived his right to seek any other information. *Id.*, pg. 4.

        ANPAC contends that the information regarding pre-contractual negotiations between ANPAC and plaintiff or any of its other agents is irrelevant and inadmissible parol evidence which cannot be used to vary or negate the terms of the parties' fully integrated agreement. If this argument sounds familiar, it is because it represents but a re-tooled version of ANPAC's motion to dismiss. *See* discussion, *supra*. Thus far, however, ANPAC's parol evidence/integrated contract defense has not succeeded in carrying the day. *See* March 22, 2010,

---

[8] Although plaintiff originally may have sought the names and addresses of ANPAC agents in Ouachita Parish for the past ten years, his current request appears limited to ANPAC's existing agents. *See e.g.*, Pl. M/Compel. The court does not interpret plaintiff's stray assertion of his right to question "those persons, whether present Agents or not of [ANPAC]," in his brief, as a request for ANPAC to provide the names of its former agents. *See* Pl. Resp. to M/Protective Order, ¶ 13 [doc. # 55].

Order [doc. # 39].

As plaintiff acknowledges, he seeks to uncover whether ANPAC made similar promises to other agents in an effort to corroborate his allegation that ANPAC promised him that, after five years, he would own his own book of business. Certainly, if ANPAC were willing to concede that it *did* make the pre-contractual promises as alleged by plaintiff, a concession that ANPAC may be willing to entertain, given their spirited and confident reliance on the ultimate vitality of their parol evidence argument, then any corroborating testimony from other agents would prove superfluous and irrelevant. Until that time, however, and in light of the currently unsettled fate of ANPAC's parol evidence/integrated contract defense, plaintiff is entitled to pursue corroborating information from ANPAC and its agents in Ouachita Parish, as specified in discovery topic number one above. Accordingly, within the next seven days of the date of this order, ANPAC shall confirm to plaintiff the names and addresses of its agents in Ouachita Parish.[9] For the same reasons, i.e. to corroborate his version of events, plaintiff is entitled to pursue discovery topic number two.

With regard to discovery topic number three, the undersigned observes that the requested discovery tends to support plaintiff's allegation that, notwithstanding any written provisions to the contrary, ANPAC induced him to leave his prior employment before he signed the agent agreement with ANPAC. While ANPAC has since uncovered evidence that potentially undermines this allegation,[10] plaintiff maintains that he effectively left his prior employment

---

[9] The names and addresses of ANPAC's agents may be found on its website: http://www.anpac.com/agent_locate/Results.aspx?ZIP=71201#.

[10] *See* Pl. Oct. 1, 2001, letter of resignation to Farm Bureau; Def. Opp. to M/Compel, Exhs. B & C [doc. # 62].

prior to the date that he signed the agent agreement with ANPAC. Therefore, discovery topic number three remains relevant and plaintiff is permitted to pursue it. Moreover, there is no indication that ANPAC will suffer any undue burden or prejudice by responding to this request.

Finally, plaintiff seeks to determine via ANPAC's 30(b)(6) deposition whether ANPAC has discharged any agent without cause during the last ten years. As with ANPAC, the court experiences some difficulty discerning the precise relevance of this discovery request. At best, it tenuously may help to corroborate plaintiff's recent revelation that he was told by ANPAC to disregard the "termination without cause" provision in the agreement, because ANPAC had never invoked it. *See* Pl. Resp. to M/Protective Order, ¶ 17 [doc. # 55]. Moreover, unlike the production requests sought from Allstate, *see* discussion, *supra*, the burden on ANPAC to respond to this question is, at worst, negligible. If, within the past ten years, ANPAC has discharged an agent, without cause, then it shall so admit, and disclose the circumstances of the discharge.

Accordingly, within the next seven days from the date of this order, counsel for the parties shall confer and agree upon a date(s) for ANPAC's 30(b)(6) deposition and the depositions of Robert Turgeon and Johnnye Ford, on the enumerated topics, as authorized herein.

## Conclusion

For the above-assigned reasons,

The motions for protective order filed by plaintiff Justin Guerriero [doc. # 48] and defendant ANPAC [doc. # 53] are hereby **GRANTED IN PART**, as provided herein. The motions otherwise are **DENIED**.

The motion to compel discovery [doc. # 47] filed by plaintiff Justin Guerriero is

13

**GRANTED**, in accordance with this opinion.

IT IS SO ORDERED.

THUS DONE AND SIGNED at Monroe, Louisiana, this 30th day of September 2010.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE