RECEIVED
JAN - 7 2011
TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| JUSTIN D. GUERRIERO | 09-CV-01846 |
| VERSUS | JUDGE DONALD E. WALTER |
| AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY | MAGISTRATE JUDGE HAYES |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed on behalf of defendant, American National Property and Casualty Company ("ANPAC"), [Doc. # 73] pursuant to Federal Rule of Civil Procedure 56. Plaintiff, Justin Guerriero ("Guerriero"), opposes this motion. For the reasons assigned below, the motion for summary judgment is **GRANTED**. Guerriero's claims are **DISMISSED WITH PREJUDICE**.

## STATEMENT OF FACTS

In 2001, Justin Guerriero was employed as an agent for Farm Bureau Insurance Company. [Doc. #1-2 at ¶ 2]. While Guerriero was employed by Farm Bureau, ANPAC approached him to come work for them, allegedly promising that Guerriero would own his own book of business after five years with ANPAC and that he would only have a required profile number of 500. [Doc. #1-2 at ¶¶ 2, 6]. On September 19, 2001, Guerriero signed an Agent Agreement with ANPAC. [Doc. #21-2]. Guerriero's contract with Farm Bureau required ten days written notice to terminate the agreement. [Doc. #62-1 at 3]. On October 1, 2001, Guerriero provided Farm Bureau written notice of his intent to terminate his association with Farm Bureau. [Doc. #62-2]. However, Guerriero

1

contends that he verbally informed Farm Bureau co-agents and the local superior that he was leaving to work for ANPAC prior to signing the ANPAC Agent Agreement on September 19, 2001. [Doc. #83-3 at ¶5].

In 2005, Guerriero, while continuing to work as an agent for ANPAC, began a part-time job with Distribution Management, Inc., supervising the unloading of tractor-trailers at a Brookshire's warehouse. [Doc. #1-2 at ¶9; Doc. #83-3 at ¶9]. On August 22, 2005, an ANPAC agent, Johnnye Ford, sent Guerriero an email addressing Guerriero's part-time position: "it is my understanding that you are now working at Brookshires and Wilstaff. If this is the case, you need to send me your resignation. I cannot continue to have part-time agents. I understand your dilemma and sympathize with your situation, but I have a job to do and I must have full-time agents to get it done." [Doc. #83-3 at exhibit 2].

On March 29, 2006, ANPAC sent Guerriero a letter, pursuant to a section of the Agent Agreement, terminating Guerriero's relationship with ANPAC effective May 4, 2006. [Id. at exhibit 3]. After receiving the letter, Guerriero contacted Robert Turgeon ("Turgeon"), ANPAC's regional director for agents in Arkansas and Louisiana. [Id. at ¶11]. Guerriero alleges that during this conversation he informed Turgeon that he would quit his part-time job, which he claims paid twice as much as his ANPAC position, if Turgeon would assure him that he would not be terminated thereafter, which Turgeon, per Guerriero's declaration, purportedly did. [Id.]. Guerriero subsequently quit his part-time position with Distribution Management. [Id. at ¶12]. On April 19, 2006, ANPAC informed Guerriero via letter that the March 29 termination letter was rescinded. [Doc. #53-13]. Guerriero continued his employment with ANPAC through February 6, 2007, when he received another termination letter that ended his employment with ANPAC effective March 13, 2007. [Doc.

2

#53-14].

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] A fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. *Id.* The court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mutual Auto Insurance Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309 (5th Cir. 1999). The moving party need not produce evidence to negate the elements of the non-moving party's case, but need only point out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325; *Lawrence*, 163 F.3d at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine dispute as to a material fact. *Matsushita Electrical*

---

[1] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this court will rely on it accordingly.

*Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).

## DISCUSSION

Guerriero's claims focus on two actions–the signing of the Agent Agreement with ANPAC and his termination in 2007. Guerriero asserts that the Agent Agreement is void because he was under economic distress when he signed it and that he detrimentally relied on ANPAC's promises concerning him having his own book of business on his required profile number when he left his existing employment with Farm Bureau. Guerriero further contends that he detrimentally relied on a promise by Robert Turgeon that if he quit his part-time job with Distribution Management he would not be terminated by ANPAC.

<u>Economic Duress</u>

Guerriero's economic duress cause of action concerns whether he "was put under economic distress in signing the Agent Agreement with the Defendant." [Doc. #83 at 1]. As Guerriero states more specifically: "he was put under the situation where if he refused to sign the Agent Agreement with Defendant during his training in Missouri that he would be left without a job and which would have put him under economic distress." [Doc. #83-1 at 3]. However, under both Missouri and

4

Louisiana law, Guerriero's economic duress argument fails.[2]

Missouri recognizes that duress can void a contract. Duress depends on whether the party claiming duress was prevented from exercising his free will. *Andes v. Albano*, 853 S.W.2d 936, 942 (Mo. 1993) ("The central question with respect to duress is whether, considering all the surrounding circumstances, one party to the transaction was prevented from exercising his free will by the threats or wrongful conduct of the other.") (internal quotations omitted); see also *Schmalz v. Hardy Salt Co.*, 739 S.W.2d 765, 768 (Mo.App. E.D. 1987); *Gott v. First Midwest Bank of Dexter*, 963 S.W.2d 432, 440 (Mo.App. S.D. 1998). "In order to avoid a contract with a claim of economic distress the claimant must reveal oppression from the wrongful conduct of another that deprives them of free will." *Long's Marine, Inc. v. Boyland*, 899 S.W.2d 945, 947 (Mo.App. E.D. 1995).

Guerriero has offered no evidence to suggest that he signed the Agent Agreement with ANPAC against his free will. Rather, the proffered evidence is uncontroverted that Guerriero exercised his free will in signing the Agent Agreement. In ANPAC's first set of requests for admission to Guerriero [Doc. #53-2] it asked Guerriero to admit "that you voluntarily signed the Agent Agreement dated September 19, 2001." [Id. at No. 59]. Guerriero responded: "Denies if 'voluntarily' means done 'without valuable consideration…' but admitted if 'voluntary' [sic] means only 'having the power of free choice.'" [Doc. #73-3 at No. 59]. Based on this evidence there is no dispute that Guerriero signed the Agent Agreement under his own free will. Consequently, any assertion of economic duress under Missouri law is misplaced.

Louisiana also recognizes economic duress as a vice of consent that makes a contract void.

---

[2] The Agent Agreement includes a clause stating it will be governed by the laws of Missouri. [Doc. #21-2 at 4]. Because Guerriero's claims cannot stand under the laws of either Missouri or Louisiana, this Court does not entertain the question of which state's law applies.

5

Article 1959 of the Civil Code states: "Consent is vitiated when it has been obtained by duress of such a nature as to cause a reasonable fear of unjust and considerable injury to a party's person, property, or reputation." The Comments to Article 1959 note that the 1984 revision substituted "duress" for "violence and threats." "In sum, 'duress' is a word of art or technical word in the English language which expresses exactly what is meant by 'violence and threats' in C.C. Arts. 1850-1852 (1870)." La. C.C. Art. 1959 cmt. B.

"Article 1959 sets forth a subjective as well as an objective standard for evaluating a claim of duress." *Monterrey Center, LLC v. Education Partners, Inc.*, 5 So.3d 225, 230 (La.App. 1 Cir. 2008). "The subjective element is the party's personal reaction to circumstances, and the objective element is the reasonableness of the fear and unjustness of the injury based on how a reasonable person would react under those circumstances." *River Birch, Inc. v. Robin & Assoc., Inc.*, 906 So.2d 729, 737 (La.App. 1 Cir. 2005). Further, economic duress or fear of economic deprivation is sufficient to vitiate consent in a contract. *Monterrey Center*, 5 So.3d at 230 (citing *Wolf v. Louisiana State Racing Commission*, 545 So.2d 976, 981 (La. 1989). "[Economic distress] results when a person makes an improper threat that induces a party who has no reasonable alternative to manifest his assent." *Pellerin Const., Inc. v. Witco Corp.*, 169 F.Supp.2d 568, 579 (E.D.La. 2001).

Citing *Wolf*, ANPAC argues that a claim of economic duress "requires evidence of illegal conduct in the form of 'unlawful constraint' and/or 'violence or threats.'" [Doc. #73-1 at 23]. ANPAC further contends that there is no evidence of an unlawful act, violence, or threat on its part that would support Guerriero's economic duress claim. While this Court does not opine on ANPAC's construction of economic duress, it does agree that to make a claim for duress there must be some threat-like activity that leads to the duress. Guerriero has not presented evidence of such an

6

activity by ANPAC. In his declaration Guerriero explains the circumstances that created his duress as follows:

> 6. Declarant stated that he took the training in Missouri and while he was at the training in Missouri he was then shown, for the first time, the Contract Agreement entitled "American National Property and Casualty Company Agent Agreement" [...]
> 7. Declarant stated that when he saw the provision that he could be dismissed without cause, by giving only thirty (30) days notice, he did not want to sign the agreement but, Declarant stated that he had given up his employment with Louisiana Farm Bureau and told Louisiana Farm Bureau that he wa going to work for ANPAC; and, at that point in time, he certainly believed that he could not return to work for Louisiana Farm Bureau, which meant that if he did not sign the Agent Agreement in question that he would not have employment which would put him under economic duress, as he would be unemployed.

[Doc. #83-3]. Nothing in this statement alleges any threatening action by ANPAC or its agent. There is simply no evidence in the record to suggest that Guerriero was subject to a threat from ANPAC upon which his economic duress claim can stand. As the court in *Pellerin* noted, "the mere stress of business conditions... does not constitute economic duress if the opposing party did not engage in conduct designed to produce that stress." 169 F.Supp.2d at 579. While Guerriero may have found himself in a precarious position between jobs, there is no proof that threatening actions by ANPAC were the cause of that stress.

If anything, the business stress Guerriero faced was self-inflicted. On September 5, 2001, Guerriero signed an Agent Agreement Before Appointment.[Doc. #35-5], which he also signed under his own free will [Doc. ## 53-2 and 73-3 at 56]. Emphasized on the first page of the agreement is the following statement: **"Under no circumstances will I give up any employment I have or give**

7

***notice to any employer of termination*** of employment in the expectation of my appointment within the Company until I have been advised, in writing by the Company, that the Company has given final approval of my application for appointment" (emphasis in original). Guerriero concedes that ANPAC never gave him written final approval of his application. [Doc. ##53-2 and 73-3 at 7]. The Agent Agreement Before Agreement warned Guerriero that employment with ANPAC was not guaranteed. That language, combined with the lack of a threat by ANPAC, makes it impossible for Guerriero to maintain a claim for economic duress under Louisiana law.

Even if Guerriero had shown some threshold improper threat, his claim does not meet the subjective standard for duress. As noted above, Guerriero admits that he signed the Agent Agreement "having the power of free choice." [Doc. #73-3 at No. 59]. Signing a document entirely by one's free will impairs an argument that the document was signed with "no reasonable alternative to manifest his assent." *Pellerin*, 169 F.Supp.2d at 579. The very notion of duress as a defense is that a party entered a contract not of their own free will. Economic duress is even defined as "[a]n unlawful coercion to perform by threatening financial injury at a time *when one cannot exercise free will.*" Black's Law Dictionary (9th ed. 2009) (emphasis added). Because Guerriero admits that he signed the Agent Agreement by his own free choice he cannot successfully claim economic duress, under either Missouri or Louisiana law, to vitiate his content to that agreement. The Agent Agreement signed by Guerriero on September 19, 2001, then, remains in effect.

Detrimental Reliance

Guerriero asserts that he detrimentally relied on ANPAC or its agents on two occasions–when agreeing to leave Farm Bureau to begin work for ANPAC and when quitting his part-time job with Distribution Management. In both circumstances and under both Missouri and

Louisiana law Guerriero's claims for detrimental reliance are unfounded and must be dismissed.

*1 – Promises by ANPAC Regarding the Terms of Guerriero's Employment*

Under Missouri law, the concept of detrimental reliance is referred to as promissory estoppel. "A claim of promissory estoppel has four elements: (1) a promise; (2) on which a party relies to his or her detriment; (3) in a way the promisor expected or should have expected; and (4) resulting in an injustice that only enforcement of the promise could cure." *Clevenger v. Oliver Ins. Agency, Inc.*, 237 S.W.3d 588, 590 (Mo. 2007). "Prior and contemporaneous agreements are conclusively presumed to have been merged into an unambiguous written contract, which becomes the final memorial of the agreement." *Central Prod. Credit Ass'n v. Reed*, 805 S.W.2d 300, 302 (Mo.App. S.D. 1991). Consequently, "the remedy of promissory estoppel is not available when an unambiguous contract exists that covers the issue for which damages are sought." *Hamra v. Magna Group, Inc.*, 956 S.W.2d 934, 939 (Mo.App. S.D. 1997). "Promissory estoppel cannot be used to create rights not included within the contract." *Halls Ferry Investments, Inc. v. Smith*, 985 S.W.2d 848, 853 (Mo.App. E.D. 1998).

Under the rules of *Hamra* and *Halls Ferry Investments*, Guerriero cannot succeed on his detrimental reliance claims if the Agent Agreement is unambiguous and covers the issues for which he seeks damages. "A contract is only ambiguous... if its terms are susceptible to honest and fair differences." *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 860 (Mo. banc 2006). "A contract is not ambiguous merely because the parties disagree as to its construction. An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Etheridge v. TierOne Bank*, 226 S.W.3d 127, 131 (Mo. banc 2007) (internal quotations and citations omitted).

9

Guerriero claims that when signing with ANPAC he detrimentally relied on ANPAC's promise that he would own his own book of business within five years and would have a required profile number of 500. However, the Agent Agreement includes an integration clause that reads: "This Agreement, with the attached Schedules and Supplements, constitutes the sole agreement and supersedes all prior agreements between you and the Company."[Doc. #83-3, exhibit 1 at 7]. The language of the Agent Agreement is unambiguous; the terms outlined in the Agent Agreement constitute the only contract between ANPAC and Guerriero, precluding any and all prior agreements between the parties. Consequently, any promises made prior to entering this agreement are moot. Guerriero's claim for detrimental reliance in entering the ANPAC agreement cannot stand under Missouri law of promissory estoppel.

This claim is also barred under the law of detrimental reliance in Louisiana. Detrimental reliance originates from article 1967 of the Civil Code:

> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

To establish detrimental reliance, "a party must prove three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance." *Suire v. Lafayette City-Parish Consol. Gov't*, 907 So.2d 37, 59 (La. 2005). Like promissory estoppel, detrimental reliance "usually functions when no written contract or an unenforceable contract exists between the parties." *Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 (5th Cir. 2004)

(citing *Jackson v. Lare*, 779 So.2d 808, 814 n.1 (La.Ct.App.2000)). "A promisee's business acumen is properly considered when determining reasonableness of the claimed reliance." *Academy Morg. Co., LLP v. Barker, Boudreaux, Lamy & Foley*, 673 So.2d 1209, 1212 (La.App. 4 Cir. 1996). As noted above, the integration clause in the Agent Agreement is unambiguous. Based on the integration clause in the Agent Agreement and Guerriero's experience as an insurance agent, it was not reasonable or justifiable for him to rely on any promises by ANPAC that were not included in the Agent Agreement. Therefore, his detrimental reliance claims concerning the beginning of his employment with ANPAC must be dismissed.

*2 – Promises by ANPAC Regarding Guerriero's Part-time Employment*

Guerriero also makes a detrimental reliance claim concerning promises allegedly made to him when he quit his part-time employment. Guerriero alleges that Turgeon, acting on behalf of ANPAC, promised Guerriero that if he quit his part-time job then ANPAC would not fire him. Based on the clear language of the Agent Agreement as well as Missouri and Louisiana law, this detrimental reliance contention cannot survive.

First, the language of the Agent Agreement is clear that oral amendments to the Agreement are impermissible. The Agent Agreement specifically states that "Any modification of this Agreement must be <u>in writing</u> and signed by you and by a duly authorized Company Headquarters Representative" (emphasis in original). [Doc. #83-3, exhibit 1 at 4]. As noted above, detrimental reliance or promissory estoppel should not lie where there is an unambiguous agreement on the issue. Guerriero admits that ANPAC never altered or amended in writing the terms of the Agreement. [Doc. ##53-2 and 73-3 at 26]. It was unreasonable as a matter of law for Guerriero to rely on Turgeon's statements when the Agent Agreement was explicit in explaining the sole method of

11

amending or modifying the terms of the Agreement. *See Robin v. Binion*, 2007 WL 2895307 at *3 (W.D. La. Jan. 5, 2007) (holding as unreasonable as a matter of law a plaintiff's claim for detrimental reliance on an oral promise when the "case involved a fully-integrated, unambiguous contract between the parties that specifically limits the ways in which that contract can be amended, modified or altered.").

Finally, even if Turgeon's alleged promises had altered the Agreement, ANPAC would not have been precluded from terminating Guerriero in 2007. Both Missouri and Louisiana law provide that employment with no specific term or duration is at-will employment that can be terminated at any time. La. C.C. art. 2024 ("A contract of unspecified duration may be terminated at the will of either party by giving notice, reasonable in time and form, to the other party."); *Chadd v. City of Lake Ozark*, 2010 WL 3955157 at *4 (Mo.App. W.D. Oct. 12, 2010) ("Absent an employment contract with a statement of duration, an employment at will is created." (quoting *Luethans v. Washington Univ.*, 894 S.W.2d 169, 172 (Mo. banc 1995)). The Agent Agreement, Turgeon's alleged promise, and the April 19, 2006 rescission of termination letter all lack a duration for any employment or extended employment of Guerriero by ANPAC. For that reason, Guerriero's employment was and continued to be at-will. ANPAC remained free to terminate Guerriero in 2007 even if Turgeon's promises altered the employment agreement with Guerriero; so even assuming there was detrimental reliance, the terms of the new agreement would not have barred ANPAC from terminating Guerriero at any time. Therefore, Guerriero's claims for detrimental reliance based on the promises of Turgeon must be dismissed.

## CONCLUSION

For the reasons assigned above, ANPAC's motion for summary judgment is **GRANTED**.

Guerriero's claims are **DISMISSED WITH PREJUDICE**.

_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE